IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TOTAL RECON AUTO CENTER, LLC, | * |
| Plaintiff, | * |
| v. | *   Civ. No. DLB-23-672 |
| ALLSTATE INSURANCE CO., | * |
| Defendant. | * |

**MEMORANDUM OPINION**

Total Recon Auto Center, LLC ("Total Recon") sued Allstate Insurance Co. ("Allstate") in Maryland state court over what Total Recon claims is an unlawful campaign by Allstate to disrupt Total Recon's business and tarnish its reputation. ECF 4. Allstate removed the case to federal court. ECF 1. Total Recon moves to remand the case to state court and requests an award of attorneys' fees and costs incurred litigating this motion. ECF 15. The matter is fully briefed. ECF 15, 17, 21. No hearing is necessary. *See* Loc. R. 105.6. For the reasons below, the Court denies Total Recon's motion to remand and request for attorneys' fees and costs.

**I.   Background**

**A.   The substantive dispute**

The Court begins with the facts as Total Recon alleges them. Total Recon is an independent, full-service auto repair shop and collision center in Montgomery County, Maryland. ECF 4, ¶¶ 6–7. In November 2021, Total Recon became a Tesla-Approved Collision Center ("TACC"). *Id.* ¶¶ 8–9. As a TACC, Total Recon received special training and certification from Tesla, Inc. ("Tesla") to service Tesla electric vehicles. *Id.* ¶ 10. As a condition of becoming a TACC, Total Recon agreed to charge $60 per hour for the labor involved in body and refinish work—$14 per hour higher than the prevailing rate for comparable work in the Washington, D.C.

metropolitan area. *Id.* ¶ 11. On March 7, 2022, Total Recon informed insurers—Allstate included—of the new rate. *Id.* ¶ 12. Although every other insurer eventually agreed to cover $60 per hour, Allstate did not. *Id.* That left Total Recon's Allstate-insured customers paying out of pocket for the remaining $14 per hour their insurance did not cover. *Id.* ¶ 13. In response, some of these customers filed complaints against Allstate for unfair or deceptive trade practices with the Maryland Insurance Administration ("MIA"). *Id.* ¶¶ 14–15.

The crux of Total Recon's allegations is that Allstate then initiated an unlawful campaign to subvert Total Recon's business. Total Recon employs a completely digital claims adjustment process: Instead of filing an insurance claim after a claims adjuster physically inspects each vehicle, Total Recon files a claim after taking photos and videos of each vehicle and uploading them for adjusters and insurance companies. *Id.* ¶¶ 16–22. Until this dispute, Allstate participated in Total Recon's digital process and paid out claims accordingly. *Id.* ¶ 22. However, according to Total Recon, in May 2022, Allstate abruptly informed Total Recon that it would no longer process claims from Total Recon without physical inspections. *Id.* ¶ 24. Allstate then refused to authorize any repairs by Total Recon. *Id.* ¶ 25. As a result, Total Recon faced difficulties fulfilling existing contracts with customers Allstate insured. *Id.* ¶ 27. In the weeks that followed, Total Recon received negative reviews online for its incompatibility with Allstate. *Id.* ¶ 28. And Allstate employees allegedly disparaged Total Recon to Allstate customers and offered them financial incentives to take their repair business elsewhere. *Id.*

### B. The removal dispute

The Court continues with the facts in the record relevant to the motion to remand.[1]

On September 1, 2022, Total Recon filed the complaint in this case against Allstate in the Circuit Court for Montgomery County, Maryland for tortious interference with contractual relations, tortious interference with prospective advantage, and defamation per se. ECF 4.

In the months that followed, Total Recon made three attempts to effectuate service of process on Allstate through its statutory agent, the MIA. The first attempt began on September 26, 2022, when Total Recon delivered the summons and the complaint by hand to the MIA offices and placed them in the designated drop box in accordance with the MIA's COVID-19 protocols for service of process. ECF 15-3, at 2–3. Initially, the first attempt appeared successful. On October 21, Allstate informed Total Recon by email that it had received the papers from the MIA. ECF 15-4, at 2–3. But by the end of November, Allstate had not entered an appearance in the case or filed any responsive pleadings. ECF 15-5, at 2. In the wake of Allstate's silence, Total Recon requested an order of default on November 30. *Id.* On December 22, the circuit court denied Total Recon's request on the ground that service of process had been insufficient. ECF 15-6, at 2. The circuit court did not identify the deficiency. *Id.* The next day, Total Recon filed an amended request for an order of default. ECF 15-7, at 2–3. On January 23, 2023, the circuit court again denied Total Recon's request, again for insufficient service of process, again without further explanation. ECF 15-8, at 2. To sort the matter out, counsel for Total Recon called the circuit court the following day. ECF 15, at 4 ¶ 11. In briefing, Total Recon asserts that on this (apparently *ex parte*) phone call, the circuit court shared with Total Recon the reasoning the circuit court had

---

[1] "The Court may consider facts outside the pleadings and is not limited to the allegations in a plaintiff's complaint when evaluating a motion to remand." *InDyne, Inc. v. ASRC Commc'ns, Ltd.*, No. PWG-21-325, 2022 WL 2398449, at *1 (D. Md. Jan. 5, 2022).

3

not put on the record: It had denied the company's requests for a default because the Maryland statute governing service of process did not authorize the MIA to adopt COVID-19 protocols for service of process, rendering service by drop box invalid. *Id.*

That prompted Total Recon to initiate its second and third attempts to effectuate service of process. The circuit court reissued the summons on January 25. ECF 15-9, at 2, 4. On January 31, Total Recon mailed the reissued summons and the complaint to the MIA by certified mail. ECF 15-10, at 2–3. On February 7, the MIA accepted service by mail. *Id.* at 6. The record does not indicate whether or when the MIA transmitted the summons and complaint it received by mail to Allstate, nor whether or when Allstate received them from the MIA.

Meanwhile, on February 1, Total Recon hand-delivered the summons and complaint to an MIA agent at the MIA's office. ECF 15-9. In briefing, Total Recon asserts that this arrangement required "prolonged planning and insisting with the MIA," "which, at the time, still had the secure drop box COVID-19 protocols in place, was not open to the public, and did not regularly have agents on site." ECF 15, at 4 ¶ 12. On February 7, the MIA mailed to Allstate's registered agent, CT Corporation ("CT"), the papers Total Recon had hand-delivered to the MIA. ECF 1-1, at 4–5. Two days later—on February 9, 2023—CT received this mail from the MIA and transmitted service of process to Allstate. *Id.* at 2.

On March 10, 2023, Allstate removed the case to this court. ECF 1. On April 10, Total Recon moved to remand the case on the ground that Allstate's removal was untimely. ECF 15.

## II.  Removal Requirements

Federal law confers upon a defendant "[t]he right to remove a case from state to federal court" if a United States district court would have original jurisdiction. *See Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing 28 U.S.C. § 1441). If the defendant

predicates removal on diversity jurisdiction, "the cause of action must be between parties of completely diverse state citizenship, that is, no plaintiff may be a citizen of the same state as any defendant, and the amount in controversy must exceed $75,000." *Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 394 (4th Cir. 2018) (citing 28 U.S.C. § 1332(a)(1)).  The parties agree that this Court has original jurisdiction over this case on the basis of diversity.

They disagree over whether Allstate timely removed the action.  A removing party must file a notice of removal "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." *Id*. at 391 (quoting 28 U.S.C. § 1446(b)(1)).  When a plaintiff moves to remand the case to state court, the defendant bears the burden of proving that removal was timely. *See Mulcahey*, 29 F.3d at 151; *Lexington Mkt., Inc. v. Desman Assocs.*, 598 F. Supp. 2d 707, 709 (D. Md. 2009).  On a motion to remand, a court may consider a range of evidence, including the complaint, the notice of removal and accompanying exhibits, and submissions from the parties during briefing.  *See, e.g.*, *Trademark Remodeling, Inc. v. Rhines*, 853 F. Supp. 2d 532, 535–36 (D. Md. 2012).  "Doubts about the propriety of removal should be resolved in favor of remanding the case to state court and in doing so, removal statutes must be strictly construed." *Elliott*, 883 F.3d at 390.

### III. Discussion

The sole question here is whether Allstate timely removed the case to federal court.  That question is answered by determining first, when Total Recon properly served Allstate with the complaint and second, when the 30-day clock for removal started.

"In cases removed to federal court, state law determines whether service of process was properly effected prior to removal."  *See Steverson v. HSBC Auto Fin., Inc.*, No. DKC-10-3119,

2011 WL 1103164, at *4 (D. Md. Mar. 23, 2011); *see also Trademark Remodeling*, 853 F. Supp. 2d at 536.  Under Maryland law, "[s]ervice is made upon a corporation . . . by serving its resident agent, president, secretary, or treasurer."  Md. R. 2-124(d); *see also Trademark Remodeling*, 853 F. Supp. 2d at 539.  An out-of-state insurance corporation "must appoint the Commissioner [of the MIA] as attorney for service of process issued against the insurer in the State."  Md. Code Ann., Ins. § 4-107(a); *see also Goodloe v. James River Ins. Co.*, No. DKC-21-1318, 2021 WL 3406522, at *1 (D. Md. Aug. 4, 2021).  When the plaintiff effectuates service of process on the defendant via the defendant's statutory agent and the defendant first receives the complaint in a subsequent transmission from their statutory agent, the defendant has 30 days to remove the case from the date the defendant actually receives the complaint.  *See Elliott*, 883 F.3d at 392.

### A.  Total Recon's first attempt to effectuate service of process

Total Recon first attempted to effectuate service of process through Allstate's statutory agent, the MIA, on September 26, 2022.  Allstate received the complaint from the MIA no later than October 21, 2022.  Yet Allstate filed the notice of removal on March 10, 2023—far more than 30 days later.  If that was the complete story, then Allstate's notice of removal was untimely.

But there is more to the story.  After Total Recon's attempted service of process on September 26, Allstate did not enter an appearance or respond to the complaint, and Total Recon twice moved for an order of default in the Circuit Court for Montgomery County.  Each time, the circuit court rejected Total Recon's requests because service of process was insufficient.  Against this backdrop, this Court can find that Total Recon properly served Allstate on September 26, 2022 only by contradicting the circuit court's two findings to the contrary.

There is little Fourth Circuit authority on whether or by what standard a federal court may review a state court's prior rulings after a case is removed.  The parties do not identify a single

6

case that addresses this question. Nevertheless, two considerations convince the Court not to reconsider the circuit court's determinations. First, the Fourth Circuit has long cautioned that removal has serious federalism costs. *See Mulcahey*, 29 F.3d at 151. These costs would rise if removal empowered a federal court to reopen questions of state law that a state court already had decided. This Court must not assume such power lightly. Second, the law of the case doctrine restricts a court's power to reconsider prior rulings in the same case:

> The law of the case doctrine "generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Musacchio v. United States*, 577 U.S. 237, 244–45 (2016); *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009). The doctrine's effect is to bar a party from resurrecting issues that were previously decided or "'decided by necessary implication.'" *United States v. Lentz*, 524 F.3d 501, 528 (4th Cir. 2008) (quoting *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)). In so doing, the law of the case doctrine advances the interests of efficiency, judicial economy, and finality.

*Neal v. United States*, 599 F. Supp. 3d 270, 310 (D. Md. 2022) (cleaned up). At least one court within the Fourth Circuit has concluded that "[w]hen a case is removed from state court to federal court, the law of the case doctrine preserves any prior rulings by the state court in that case." *Dow v. Jones*, 311 F. Supp. 2d 461, 465–66 (D. Md. 2004). At the very least, the same "interests of efficiency, judicial economy, and finality" warrant deference here. *Id.* The circuit court already decided, twice, that Total Recon's first attempt to effectuate service of process did not comply with Maryland state law. Although no relevant fact or law has changed since then, Total Recon is attempting to relitigate that issue before this Court. In the absence of controlling authority, this Court finds the law of the case doctrine instructive because the considerations that motivate the doctrine call for analogous respect for the state court's prior rulings. There is little reason to think that this Court should reconsider the circuit court's prior rulings in this case, particularly because those rulings concern state law, the circuit court's area of expertise.

Out of respect for the role of state courts in our federal system and the considerations of efficiency and finality that underlie the law of the case doctrine, this Court declines to disturb the circuit court's rulings that Total Recon did not properly effectuate service of process on September 26, 2022. For that reason, Allstate's 30 days to remove the case did not begin when it first received the complaint from the MIA on or by October 21, 2022.

### B. Total Recon's second and third attempts to effectuate service of process

Total Recon next attempted to effectuate service of process by mailing the necessary papers to the MIA on January 31, 2023 and by hand-delivering them to an agent of the MIA the next day. The Court must determine as a matter of state law whether and when Total Recon properly effectuated service of process by these means. If service was effectuated, the Court then must determine when Allstate's 30 days to remove the case began.

#### 1. Whether and when Total Recon effectuated service of process

Total Recon's second attempt to effectuate service of process—the attempt by mail—was defective. Maryland law authorizes service of process "by certified mail requesting: 'Restricted Delivery . . . .'" Md. R. 2-121(a). Service in accordance with this rule "is complete upon delivery." *Id.*; *see also Goodloe*, 2021 WL 3406522, at *1, *3. So Total Recon could have served process on Allstate by mailing the papers to Allstate's statutory agent, the MIA, by certified mail, restricted delivery requested. Total Recon did use certified mail, but it did not request restricted delivery. The box for restricted delivery is not checked on the certified mail receipt nor on the return receipt. ECF 15-10, at 6. As a result, Total Recon's second attempt at service of process was improper under Maryland law. *See Brown v. Am. Insts. for Rsch.*, 487 F. Supp. 2d 613, 617 (D. Md. 2007) ("Plaintiff's repeated attempts at service by certified mail were all invalid for failure to comply with the restricted delivery requirements.").

8

Total Recon's third attempt at service was proper. On February 1, an agent of Total Recon hand-delivered the papers to an agent of the MIA at the MIA's offices. This service of process by hand delivery complied with Maryland law. *See* Md. R. 2-121(a); *see also Trademark Remodeling*, 853 F. Supp. 2d at 540.

## 2. When the removal clock began

That leaves the question of when Allstate's 30 days to remove the case began: February 1, when Total Recon served process on the MIA, or February 9, when Allstate received process from the MIA. If the countdown began on February 1, then Allstate's removal on March 10 was untimely. If the countdown began on February 9, then Allstate's removal was timely. This question is difficult. To illustrate why—and to answer it—the Court reviews the removal statute and the controlling case law.

The removal statute states, in relevant part: "The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." 28 U.S.C. § 1446(b)(1). Taking the plain meaning of the text in isolation, it might seem like the statute provides that the defendant must remove within 30 days of receiving the complaint, whether they received the complaint "through service *or otherwise*."

However, the Supreme Court has not embraced the plain meaning of the text. Instead, the Court has read the statute in light of the "bedrock principle" that "a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). In that light, the Court has held that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,'"

after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Id.* at 347–48 (quoting 28 U.S.C. § 1446(b)(1)). As the Fourth Circuit explained more recently,

> [t]he general rule, as established by the Supreme Court in *Murphy Brothers*, is that the time for counting the days for filing notice of removal under § 1446(b) starts when the defendant is formally served with the summons and complaint making the defendant an official party to the action and requiring the defendant to appear.

*Elliott*, 883 F.3d at 391 (citing *Murphy Bros.*, 526 U.S. at 347–48).

But that "general rule" does not apply here because Allstate was served through a statutory agent. The Fourth Circuit has "recognized a statutory agent exception to the *Murphy* Rule" that the defendant's 30 days to remove start on the day the defendant is served. *Id.* at 392. Under the statutory agent exception, "the 30–day period for submitting notice of removal in § 1446(b) is not triggered by service on a statutory agent." *Id.* The *Elliott* Court recognized the statutory agent exception with a specific concern in mind. "If the removal period began running upon receipt of the complaint by the statutory agent, the privilege of a defendant to remove could be easily curtailed or abrogated completely." *Id.* at 393 (quoting *Lilly v. CSX Transp., Inc.*, 186 F. Supp. 2d 672, 674 (S.D. W.Va. 2012)). Whether and when the defendant received actual notice of the complaint would depend on the diligence of their statutory agent. If the statutory agent did not act quickly, "the filing deadline [could] pass before the defendant actually receive[d] a copy of the complaint." *Id.* Yet "the defendant's right to a federal forum should not depend upon the rapidity and accuracy with which the statutory agent informs its principal of the commencement of litigation against it." *Id.* (quoting *Medina v. Wall Mart Stores, Inc.*, 945 F. Supp. 519, 521 (W.D.N.Y. 1996)). To address that concern, the Fourth Circuit held that "when a statutory agent is served, the time to remove the case runs from the defendant's actual receipt of the complaint." *Id.* at 392.

This case presents a question about the statutory agent exception that neither *Elliott* nor any subsequent Fourth Circuit decision expressly addresses: Do the defendant's 30 days to remove the case begin whenever formal service and actual receipt have occurred, regardless of the sequence in which they occur or how the defendant receives the complaint? Or does the removal period begin only once the defendant has actually received the complaint *from* their statutory agent *after* the agent has been served?

After careful consideration, this Court concludes that when, as here, the defendant receives the complaint by informal or improper means before the plaintiff serves the defendant's statutory agent, the defendant has 30 days to remove the case from when they receive the complaint from their statutory agent—not before.[2] That conclusion follows from reading *Murphy Brothers* and *Elliott* together. As *Murphy Brothers* held, the defendant's time to remove the case does not begin before the defendant is formally served. *See Murphy Bros.*, 526 U.S. at 347–48; *see also Trademark Remodeling*, 853 F. Supp. 2d at 539 (quoting *Samuels v. Two Farms, Inc.*, No. DKC-10-2480, 2010 WL 4103670, at *2 (D. Md. 2010)). And as *Elliott* declared in one formulation of its holding, "service on a statutory agent is not service on the defendant within the meaning of § 1446(b)." *Elliott*, 883 F.3d at 394. Because the removal clock cannot start before service of process on the defendant and because service on a statutory agent is not service on the defendant, the clock cannot start when the plaintiff serves process on the defendant's statutory agent. Until the statutory agent transmits process to the defendant, the defendant has not been served within the meaning of the removal statute—even if the defendant has already received the complaint by

---

[2] This district has reached this conclusion before, albeit in dicta. *See Davis v. Lang*, No. ELH-21-1771, 2022 WL 394462, at *3 (D. Md. Feb. 9, 2022) ("[W]here a plaintiff chooses to serve the defendant's statutory agent, § 1446(b)'s clock does not commence until the defendant actually receives the summons and complaint *from the agent*.") (emphasis added).

informal or improper means. *Elliott*'s statement that "when a statutory agent is served, the time to remove the case runs from the defendant's actual receipt of the complaint," *id.* at 392, must mean that the time to remove the case runs from the defendant's actual receipt of the complaint from their statutory agent, after service upon their statutory agent.

That is also the only way to apply the statutory agent exception consistently with *Murphy Brothers*'s insistence that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' *after and apart from service of the summons*." 526 U.S. at 347–48 (emphasis added). In the scenario at issue, (1) the plaintiff transmits the complaint and summons to the defendant informally or improperly, then (2) the plaintiff serves the complaint and summons upon the defendant's statutory agent, and then (3) the defendant receives the summons and the complaint from the statutory agent. At (2), neither *Murphy Brothers* trigger has happened yet. The defendant has not received "simultaneous service of the summons and complaint" because, as *Elliott* holds, the defendant has not been served at all in the eyes of the removal statute. And the defendant has not received the complaint "after and apart from service of the summons," because the defendant received the complaint at (1) and the defendant will not be served with the summons until (3). In short, *Murphy Brothers* requires the defendant's removal time to begin at (3)—when the defendant receives the summons and the complaint from their statutory agent.

Another passage in *Elliott* confirms this interpretation. *Elliott* quotes and endorses the proposition that "the time for removal begins to run only when the defendant or someone who is the defendant's agent-in-fact *receives the notice via service*, as prescribed in the *Murphy Brothers* case." *Elliott*, 883 F.3d at 392 (quoting 14C Charles Alan Wright, *et al.*, Fed. Prac. & Proc. § 3731 (4th ed. 2017)) (emphasis added). When the defendant receives informal or improper notice of the

12

plaintiff's claims before the plaintiff serves process on the defendant's statutory agent, the defendant has not "receive[d] the notice *via service*." *Id.* (emphasis added). The defendant or their agent-in-fact only receives that notice "via service" when the defendant's statutory agent transmits it to them after being served. Once again, *Elliott* implies that in a case like this one, the defendant has 30 days to remove from the date their statutory agent transmits the complaint to them.

This interpretation is also consistent with the policy goals *Elliott* ascribes to the removal statute. As *Elliott* observes, "the congressional intent in enacting and amending § 1446(b) was to provide the defendant with adequate time to consider filing for removal." *Id.* at 393. If the defendant's time to remove the case starts when the plaintiff serves their statutory agent, then the defendant may not even know when their "time to consider filing for removal" has begun. Consider a hypothetical only slightly different than this case. The day the plaintiff files the complaint, the plaintiff also emails a copy to the defendant. The next week, the plaintiff effectuates service of process on the defendant's statutory agent. But the statutory agent does not transmit process to the defendant for another month. By the time the defendant knows that their 30 days have started, those days have already passed. The defendant's awareness of the date by which they have to file a notice of removal would "depend upon the rapidity and accuracy with which the statutory agent informs its principal of the commencement of litigation against it." *Id.* (quoting *Medina*, 945 F. Supp. at 521). That is what the statutory agent exception is meant to prevent. Or consider it this way: If the defendant is obligated to remove within 30 days of actual receipt of the complaint and formal service on their statutory agent, regardless of when or from whom the defendant receives the complaint, then a defendant who receives the complaint before formal service will have to assume that the removal clock starts as soon as they receive the complaint. If

the defendant waits for the plaintiff to serve the defendant's statutory agent, the defendant may not find out that their statutory agent has been served until it is too late to remove. That pressure to make an immediate removal decision would undermine *Murphy Brothers*'s guarantee that defendants are "not obliged to engage in litigation" until they have been formally served. 526 U.S. at 347.

Total Recon's counterargument is that this Court should follow *Goodloe v. James River Insurance Company* in concluding that the defendant's 30 days to remove begin once the defendant has received a copy of the complaint and their statutory agent has been formally served, regardless of the order in which those events take place. ECF 15, at 8–9 (citing *Goodloe*, 2021 WL 3406522, at *2–4). In *Goodloe*, the plaintiff emailed the defendant a copy of the complaint on the same day that the plaintiff effectuated service of process on the defendant's statutory agent. 2021 WL 3406522, at *3. But the defendant never received the complaint from the statutory agent. *Id*. Nevertheless, the court held that the defendant's time to remove the case began the day the defendant "had an actual copy of the complaint and service had been made on the statutory agent"—regardless of when or from whom the defendant received the complaint. *Id*. at *3–4.

After thorough consideration, the Court concludes that *Elliott* blocks that path. Although *Goodloe* examined *Elliott* carefully, it did not acknowledge *Elliott*'s holding that "service on a statutory agent is not service on the defendant within the meaning of § 1446(b)." *Elliott*, 883 F.3d at 394. That holding matters. The defendant's 30 days to remove the case cannot begin before the defendant is served. *Murphy Bros.*, 526 U.S. at 347–48. If, as *Elliott* instructs, service on the defendant's statutory agent is not service on the defendant for removal purposes, then a rule that permits the removal clock to start upon service on the statutory agent if the defendant already

14

received the complaint permits the removal clock to start before the defendant has been served "within the meaning of § 1446(b)," *Elliott*, 883 F.3d at 394, contravening *Murphy Brothers*.

*Goodloe* appears to have found otherwise because the defendant had "not shown that service under Maryland law was not effective upon service on the MIA." *Goodloe*, 2021 WL 3406522, at *3. But even if service on the MIA is service on the defendant under Maryland law, it is not "service on the defendant within the meaning of § 1446(b)." *Elliott*, 883 F.3d at 394. If the fact that service on a statutory agent is service on the defendant under state law were dispositive in determining the timeline for removal, then *Elliott*'s holding that "when a statutory agent is served, the time to remove the case runs from the defendant's actual receipt of the complaint" would be wrong too. *Id.* at 392.

The two cases *Goodloe* cited do not overcome *Elliott* either. One of them, *PurAyr, LLC v. Phocatox Techs., LLC*, 263 F. Supp. 3d 632 (W.D. Va. 2016), precedes *Elliott*. The other, *Mullins v. Visiture, LLC*, postdates *Elliott* but relies heavily on *PurAyr*. *See* No. 5:19-cv-00052, 2019 WL 5445299, at *2 (W.D. Va. Oct. 23, 2019). *Mullins* is the only case within the Fourth Circuit that presents facts like those at issue here. In *Mullins*, as here, the defendant received a copy of the complaint *before* the plaintiff served the defendant's statutory agent: Mullins's attorney emailed the complaint to the defendant's Chief Operating Officer on the same day the plaintiff filed it in court. *Id.* at *1. Four days later, the plaintiff effectuated service of process on the defendant's statutory agent. *Id.* However, the statutory agent did not mail the papers to the address on file for the defendant for three weeks. *Id.* Making matters worse, that address was not accurate, so the defendant did not receive notice that the plaintiff had effectuated service of process on the defendant's statutory agent until nearly a month later, when Mullins emailed the defendant a copy of a motion for a default judgment. *Id.* At that point, the defendant removed the case to federal

15

court. *Id.* The court granted Mullins's motion to remand, holding that the defendant's 30 days to remove the case began the day the plaintiff served the defendant's statutory agent. *Id.* at *2. The *Mullins* Court reasoned that the removal clock starts when the defendant has a copy of the complaint and their statutory agent has been served, regardless of the sequence in which those events take place. *Id.*

*Mullins* acknowledged *Elliott*'s holding that "service on a statutory agent is not service on the defendant within the meaning of § 1446(b)." *Id.* at *2 (quoting *Elliott*, 883 F.3d at 394). But *Mullins* did not explain how to reconcile that proposition with the rule *Mullins* adopted—that the removal clock starts upon service on the defendant's statutory agent if the defendant already received a copy of the complaint. Here is what *Mullins* said about *Elliott*:

> In *Elliott*, the action was removed more than thirty days from service on the statutory agent, but less than thirty days from when defendant actually received the complaint. The removal was therefore timely because, unlike in this case, the removal was filed within thirty days of actual receipt. The reasoning in *Elliott* is consistent with the court's analysis in this case: that there must be actual receipt of a copy of the complaint in addition to formal service under state law because "[s]erving a statutory agent does not guarantee that the defendant is provided with actual notice of the complaint or adequate time to decide whether to remove a case." Both conditions are necessary, but not sufficient standing alone, to commence the removal clock.

*Mullins*, 2019 WL 5445299, at *2 (internal citations omitted). Nothing in this passage addresses *Elliott*'s holding. Because "service on a statutory agent is not service on the defendant within the meaning of § 1446(b)," *Elliott*, 883 F.3d at 394, the defendant has not been served for removal purposes until the statutory agent transmits process to the defendant. And until the defendant has been served, the defendant's 30 days to remove the case have not started. *Murphy Bros.*, 526 U.S. at 347–48. By starting the 30-day countdown to removal when the plaintiff serves the defendant's statutory agent, *Mullins*'s rule runs the defendant's time to remove the case before the defendant has been served. To be sure, *Elliott* did not explicitly address the question at issue in *Mullins*,

16

*Goodloe*, and the case at hand. But as the Court has explained, the only way to read *Elliott* and *Murphy Brothers* consistently is to conclude that the defendant has 30 days to remove from the date they receive the complaint from their statutory agent.

In sum, when the plaintiff effectuates service of process on the defendant by the defendant's statutory agent, the defendant has 30 days to remove, starting from the date the defendant or their agent-in-fact actually receives the complaint from their statutory agent.

Identifying the rule has been difficult, but applying it is easy. Here, Total Recon effectuated service of process on Allstate by hand-delivering the complaint to Allstate's statutory agent, the MIA, on February 1, 2023. On February 7, the MIA mailed the complaint to Allstate's registered agent, CT. CT received the complaint on behalf of Allstate on February 9. As a result, Allstate had 30 days from February 9 to remove. Allstate filed for removal on March 10, 2023. March 10 was the twenty-ninth day from February 9. Therefore, Allstate timely removed the case to this Court. Because Allstate's removal was timely, Total Recon's motion to remand is denied.

## C. The request for attorneys' fees and costs

Total Recon also requests attorneys' fees and costs under 28 U.S.C. § 1447(c). ECF 15, at 10. Under § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). This provision "provides the district court with discretion to award fees when remanding a case." *In re Lowe*, 102 F.3d 731, 733 n.2 (4th Cir. 1996). Because the Court denies the motion to remand, the Court denies Total Recon's request for attorneys' fees and costs as well.

## IV. Conclusion

Total Recon's motion for remand and request for attorneys' fees and costs, ECF 15, is denied.  A separate order follows.

Date:  October 31, 2023

Deborah L. Boardman
United States District Judge