**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **TOTAL RECON AUTO CENTER, LLC,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. DLB-23-672** |
| **ALLSTATE INSURANCE CO.,** | * | |
| **Defendant.** | * | |

**MEMORANDUM OPINION**

Total Recon Auto Center, LLC ("Total Recon") sued Allstate Insurance Co. ("Allstate") in Maryland state court over what Total Recon claims is an unlawful campaign by Allstate to disrupt Total Recon's business and tarnish its reputation. ECF 4. Pending before the Court is Allstate's motion to dismiss for failure to state a claim. ECF 16. The motion is fully briefed. ECF 16-1, 20, 22. No hearing is necessary. *See* Loc. R. 105.6. For the reasons below, the Court grants Allstate's motion to dismiss.

**I.     Background**

Total Recon is an independent, full-service auto repair shop and collision center in Montgomery County, Maryland. ECF 4, ¶¶ 6–7. In November 2021, Total Recon became a Tesla-Approved Collision Center ("TACC"). *Id.* ¶¶ 8–9. As a TACC, Total Recon received special training and certification from Tesla, Inc. ("Tesla") to service Tesla electric vehicles. *Id.* ¶ 10. As a condition of becoming a TACC, Total Recon agreed to charge $60 per hour for the labor involved in body and refinish work—$14 per hour higher than the prevailing rate for comparable work in the Washington, D.C. metropolitan area. *Id.* ¶ 11. On March 7, 2022, Total Recon informed insurers—Allstate included—of the new rate. *Id.* ¶ 12. Although every other insurer eventually agreed to cover $60 per hour, Allstate did not. *Id.* That left Total Recon's Allstate-insured

customers paying out of pocket for the remaining $14 per hour their insurance did not cover.  *Id.* ¶ 13.  In response, some of these customers filed complaints against Allstate for unfair or deceptive trade practices with the Maryland Insurance Administration ("MIA").  *Id.* ¶¶ 14–15.

The crux of Total Recon's allegations is that Allstate then initiated an unlawful campaign to subvert Total Recon's business.  Total Recon employs a completely digital claims adjustment process: Instead of filing an insurance claim after a claims adjuster physically inspects each vehicle, Total Recon files a claim after taking photos and videos of each vehicle and uploading them for adjusters and insurance companies.  *Id.* ¶¶ 16–22.  Until this dispute, Allstate participated in Total Recon's digital process and paid out claims accordingly.  *Id.* ¶ 22.  However, according to Total Recon, in May 2022, Allstate abruptly informed Total Recon that it would no longer process claims from Total Recon without physical inspections.  *Id.* ¶ 24.  Allstate then refused to authorize any repairs by Total Recon.  *Id.* ¶ 25.  As a result, Total Recon could not fulfill existing contracts with customers Allstate insured and terminated those contracts.  *Id.* ¶ 27.

In the weeks that followed, Total Recon received negative reviews online for its incompatibility with Allstate.  *Id.* ¶ 28.  For example, "Clayton DJCLAY Harris" gave Total Recon a one-star rating on Google, writing, "They don't work with All-State insurance.  Had to go to another company."  *Id.*  In addition, Allstate employees allegedly disparaged Total Recon to Allstate customers by phone and offered them financial incentives to take their repair business elsewhere.  *Id.*  In particular, Allstate agents said, "It is our nightmare when a car ends up at Total Recon," that Allstate "would waive deductibles if the insured were to go somewhere other than Total Recon," that "Total Recon's work is of poor quality," that "Total Recon is dishonest," and that "Total Recon is price-gouging."  *Id.* ¶ 56.

On September 1, 2022, Total Recon filed the complaint in this case in the Circuit Court for Montgomery County, Maryland, claiming that Allstate tortiously interfered with existing contracts, tortiously interfered with prospective business, and committed defamation per se. ECF 4. On March 10, 2023, Allstate removed the case to this court. ECF 1. On April 10, Total Recon moved to remand the case on the ground that Allstate's removal was untimely. ECF 15. On April 19, Allstate moved to dismiss pursuant to Rule 12(b)(6). ECF 16. On October 31, the Court denied the motion to remand. ECF 25.

## II.     Standard of Review

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pled facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Balt. Cnty., Md.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted

inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)).  The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

## III.    Discussion

Total Recon brings three counts against Allstate: tortious interference with contractual relations (Count I), tortious interference with prospective advantage (Count II), and defamation (Count III).  Total Recon seeks punitive damages for each claim.  Allstate moves to dismiss all three counts and the associated requests for punitive damages.  The Court dismisses Count I without prejudice because Total Recon has failed to plead the existence of a contract with sufficient specificity.  The Court dismisses Count II without prejudice because Total Recon has failed to plead that Allstate committed an independently wrongful or unlawful act.  And the Court dismisses Count III without prejudice because Total Recon has failed to plead the ostensibly defamatory remarks with enough detail.

### A.  Tortious interference with contractual relations

Total Recon claims that Allstate tortiously interfered with contractual relations.  Under Maryland law, to state a claim for tortious interference with contractual relations, a plaintiff must plead: (1) the existence of a contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional interference with that contract; (4) hindrance to the performance of the contract; and (5) resulting damages to the plaintiff.  *See Fowler v. Printers II, Inc.*, 598 A.2d 794, 802 (Md. Ct. Spec. App. 1991); *Macklin v. Robert Logan Assocs.*,

639 A.2d 112, 119 (Md. 1994); *Lake Shore Invs. v. Rite Aid Corp.*, 509 A.2d 727, 732 (Md. Ct. Spec. App. 1986).

Allstate's main attack on this claim is that Total Recon has not pled that any third party breached a contract with Total Recon—leaving the complaint insufficient on the fourth element. ECF 16, at 10–12. Allstate is correct that Total Recon does not plead that a third party breached a contract with the auto center. Instead, Total Recon pleads that Allstate's conduct prevented Total Recon from fulfilling its responsibilities to customers insured by Allstate, leading Total Recon itself to terminate those contracts.

But Allstate is incorrect about the legal implications of these allegations. Under Maryland law, "a person who intentionally and wrongfully hinders contract performance, as by causing a party to cancel the contract, and thereby damages a party to the contract, is liable to the injured party *even if there is no breach of the contract*." *Lake Shore*, 509 A.2d at 732 (emphasis added); *see also Baron Fin. Corp. v. Natanzon*, 509 F. Supp. 2d 501, 524 (D. Md. 2007) ("[P]roof of breach of contract is not an essential element of the tort of intentional interference with contractual relations."); *Mona Elec. Grp., Inc. v. Truland Serv. Corp.*, 56 Fed. App'x 108, 110 (4th Cir. 2003); *Trimed, Inc. v. Sherwood Med. Co.*, 977 F.2d 885, 889 (4th Cir. 1992) ("[P]roof of breach of contract is not an essential element of the tort.").

In *Webb v. Green Tree Servicing, LLC*, No. ELH-11-2105, 2011 WL 6141464, at *4–7 (D. Md. Dec. 9, 2011), the court comprehensively examined the caselaw and determined that Maryland law does not actually require a breach of contract to prove tortious interference with contract.[1]

---

[1] As Allstate points out, some Maryland cases speak as though the plaintiff must plead a breach of contract. ECF 16, at 11. *Fowler*, for instance, articulated the elements of the tort as "(1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff." 598 A.2d at 802. However, the *Webb* court considered

*Webb* observed that in a line of Maryland cases that has never been overruled, Maryland courts have held that it is enough for a tortious interference plaintiff to allege "intentional interference with a party's rights under a contract or inducing a termination without breach." *Id.* at *7.  The leading case is *Lake Shore*.  There, the Maryland Court of Special Appeals expressly held that "a person who intentionally and wrongfully hinders contract performance . . . is liable to the injured party even if there is no breach of the contract."  509 A.2d at 732.  The *Lake Shore* Court noted that, although some Maryland cases use the phrase "breach of contract" to identify the fourth element of the tort, a "parallel line of authority indicates that proof of a breach of contract is not an essential element of the tort." *Id.* at 729.  After an exhaustive review, the *Lake Shore* Court found "only two reported Maryland decisions that suggest or hold that a breach of contract is an essential element of a tortious interference claim," *id.* at 730, and then dismissed one opinion's claim to that effect as dicta, *id.*, and overruled the other, *id.* at 732.  "Wrongfully inducing a breach is surely one way of committing this tort, but it is equally surely not the only way." *Id.*  Instead, a plaintiff may state a claim for tortious interference with contractual relations by alleging that the defendant so interfered with the plaintiff's performance that they caused the plaintiff to cancel the contract. *Id.*  Similarly, in *Macklin v. Robert Logan Associates*, the Maryland Court of Appeals held a plaintiff could state a claim by alleging that "the improper or wrongful conduct . . . induce[d] the breach *or termination* of the contract."  *Macklin*, 639 A.2d at 119 (emphasis added).  And *Macklin* postdates the primary case Allstate cites, *Fowler*.  As *Webb* summarized the cases,

> "breach of contract" may be a convenient shorthand for this element of the tort in most circumstances.  But, *Macklin*, *Lake Shore*, and the other cases upon which they relied make clear that intentional interference with a party's rights under a

---

*Fowler* and concluded that "despite the phraseology in some cases describing a 'breach' of the contract as a required element, . . . that phraseology incompletely describes the tort, and . . . inducement of either a breach or a termination without breach can be actionable." *Webb*, 2011 WL 6141464, at *5, *6.

contract or inducing a termination without breach, as plaintiff alleges occurred here, may also satisfy this element of the tort in Maryland.

*Webb*, 2011 WL 6141464, at *7.

This Court agrees with the analysis and conclusion in *Webb*. No case has overruled *Lake Shore* or *Macklin*. In fact, Maryland courts still cite *Macklin* as a model case for "analyzing the wrongful interference with a contract." *See Barclay v. Castruccio*, 230 A.3d 80, 85 (Md. 2020). For that reason, Total Recon need not plead that Allstate's conduct induced a Total Recon customer to breach a contract with Total Recon.

Allstate cites only one case that postdates *Webb*'s survey of Maryland law: *Mixter v. Farmer*, 81 A.3d 631 (Md. Ct. Spec. App. 2013). *Mixter* does echo Allstate's position: "A claim for tortious interference with contract requires that the defendant . . . engage in improper conduct to induce a third party's breach of that contract." *Id.* at 638. But *Mixter* is best read as another example of a case that uses "breach" as a shorthand for the fourth element of the claim—the sort of case *Webb* and *Lake Shore* discussed and accounted for already. The facts bear that out. In *Mixter*, the plaintiff predicated his tortious interference claim on the allegation "that he may have lost contracts" because of the defendant's actions. *Id.* The court found that claim deficient because the plaintiff did "not point[] to any specific lost contract or loss of business that he incurred." *Id.* In that context—where the plaintiff alleged breach, rather than termination without breach—the court's criticism of the plaintiff's failure to identify a breach is best read as a statement that the plaintiff did not sufficiently plead their own theory of the case, not as a statement that any plaintiff must allege that a third party breached a contract to state a claim for tortious interference.

Confirming that interpretation, *Mixter* cites just one case for the elements of the tort: *Orfanos v. Athenian Inc.*, 505 A.2d 131, 138 (Md. Ct. Spec. App. 1986). *Id.* But Maryland courts recognize that *Orfanos* does not require a tortious interference plaintiff to allege that a third party

breached a contract.  *See id.* ("The tort, as it exists in Maryland, has been described thusly: a third party who, without legal justification, intentionally interferes with the rights of a party to a contract, *or* induces a breach thereof, is liable in tort to the injured contracting party.") (quotation omitted) (emphasis added); *Lake Shore*, 509 A.2d at 730 (noting *Orfanos* "did not list breach of contract" as an element).  Allstate's interpretation—that breach is required—implies that the *Mixter* court misread *Orfanos*.  This Court will not make that incorrect assumption.  Nor will the Court conclude that *Mixter*, decided by the Maryland Court of Special Appeals, purported to or actually did overrule *Macklin*, a Maryland Court of Appeals decision.  Instead, this Court concludes that it is more likely that *Mixter*, like many other Maryland cases before it, used "breach" as a shorthand for the fourth element of the tort: breach or termination without breach.

Here, Total Recon has pled the fourth element of a claim for tortious interference with contractual relations by alleging that Allstate's conduct prevented Total Recon from performing under existing repair contracts with Total Recon customers insured by Allstate, leading Total Recon to terminate them.  ECF 4, ¶¶ 37, 42–43.  At this stage, that is enough.

However, Total Recon has failed to state a claim for tortious interference with contractual relations for a different reason:  The company has not pled the first element—the existence of any contract between Total Recon and a customer—with sufficient specificity.  *See Mixter*, 81 A.3d at 638 (holding plaintiff failed to state a claim for tortious interference with contractual relations because plaintiff "has not pointed to any specific lost contract or loss of business that he incurred").[2]  Total Recon alleges that it "entered into valid repair contracts with certain customers who were insured by Allstate to perform auto repair services."  ECF 4, ¶ 37.  However, Total

---

[2] Allstate does not advance this argument in much detail, but Allstate does argue that Total Recon failed to plead facts sufficient to make any of its claims plausible.  ECF 16, at 7–9.  Because Total Recon's failure to plead a specific contract is obvious and fatal, the Court cannot ignore it.

Recon does not name any customer with whom it had a contract.  Total Recon does not describe what it agreed to provide, what it charged, or any other fact about what the contracts at issue involved.  Total Recon does not specify how many contracts it allegedly had.  Total Recon does not identify when any of the impacted contracts were made or when Total Recon rescinded them. It may well be possible for Total Recon to plead the first element of a claim for tortious interference with contractual relations without alleging all of these facts.  But it is not possible for Total Recon to do so without alleging any of them.  *See Mixter*, 81 A.3d at 638.  The Court dismisses Count I without prejudice.

### B.  Tortious interference with prospective advantage

Total Recon's next claim against Allstate is for tortious interference with prospective advantage.  To state a claim for tortious interference with prospective advantage under Maryland law, a plaintiff must plead

> (1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.

*Nat. Design, Inc. v. Rouse Co.*, 485 A.2d 663, 675 (Md. 1984) (internal quotation omitted).  A plaintiff also must "'identify a possible future relationship which is likely to occur, absent the interference, with specificity.'"  *Mixter*, 81 A.3d at 638 (quoting *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 546 (D. Md. 2006)).  Allstate argues that Total Recon has not pled that future business with Allstate insureds was likely and that Total Recon has not pled the first, third, and fourth elements of the tort.

The Court concludes that Total Recon has failed to satisfy the first element of a claim for tortious interference with prospective advantage: intentional wrongful acts.  "To establish tortious interference with prospective contractual relations, it is necessary to prove both a tortious intent

and improper or wrongful conduct." *Macklin*, 639 A.2d at 119.  To plead wrongful conduct, the plaintiff must allege an intentional act that was "independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Kaser v. Fin. Protection Mktg.*, 831 A.2d 49, 53 (Md. 2003) (quoting *Alexander & Alexander v. B. Dixon Evander & Assocs.*, 650 A.2d 260, 271 (Md. 1994)).  Qualifying conduct includes "violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits . . . in bad faith." *Alexander & Alexander*, 650 A.2d at 271.

Total Recon alleges that Allstate engaged in two forms of improper or wrongful conduct: violations of Md. Code Ann., Ins. §§ 27-303, 27-304, and 10-503 and defamatory or injuriously false communications with Allstate insureds about Total Recon.

### 1.  Violations of the Maryland Insurance Code

#### a.  Private right of action

As a threshold matter, Allstate argues that this Court must dismiss any claims predicated on violations of Ins. §§ 27-303 and 27-304 because Total Recon has no private right to enforce those provisions of the Maryland Insurance Code.  ECF 16, at 4–6.  That argument is unsound.  It is true that there is no private right of action under Ins. §§ 27-303 and 27-304.  *See Johnson v. Fed. Kemper Ins. Co.*, 536 A.2d 1211, 1213 (Md. 1988); *see also* Ins. § 27-301(b)(1).  But it is also irrelevant.  Total Recon is not proceeding against Allstate under the Maryland insurance statute. Total Recon is proceeding against Allstate under the state law cause of action for tortious interference with prospective advantage.  ECF 4, at 11–13.  "Under Maryland law, [this] tort[] require[s] that a plaintiff prove wrongful or improper conduct by the tortfeasor." *Gabaldoni v. Wash. Cnty. Hosp. Ass'n*, 250 F.3d 255, 263 (4th Cir. 2001) (citing *Travelers Indem. Co. v.*

*Merling*, 605 A.2d 83, 90 (Md. 1992)).  Total Recon alleges that Allstate violated the Maryland insurance statute to plead that element of these torts.

Allstate responds that this is a distinction without a difference.  The fact that these claims "have been framed as tortious interference . . . claims does not change the outcome."  ECF 22, at 5.  For support, Allstate cites the Fourth Circuit's warning that "the federal courts simply have no license to upend Maryland's decision to resolve this sort of insurance complaint administratively." *Hartz v. Liberty Mut. Ins. Co.*, 269 F.3d 474, 476 (4th Cir. 2001).  But the complaint at issue in *Hartz* was different from the complaint at issue here.  In *Hartz*, the plaintiff attempted to bring a claim for a tort that did not exist: a "first-party action in tort against an insurer for bad faith failure to settle a claim."  *Id.* at 474.  The Fourth Circuit affirmed the district court's "determin[ation] that, under Maryland law, there was no private right of action against an insurance company in tort for failure to settle a claim with an insured."  *Id.* at 475.  By contrast, Total Recon asserts a tort—tortious interference with prospective advantage—that Maryland law recognizes.  *See Macklin*, 639 A.2d at 116 (observing that this tort is "well established in Maryland").  Despite Allstate's insistence to the contrary, it makes all the difference that Total Recon has brought claims that Maryland law recognizes rather than ones that it does not.

Moreover, Maryland courts have signaled that a violation of the Insurance Code could constitute a wrongful act sufficient to sustain a claim of tortious interference with prospective advantage against an insurer.  In *Travelers Indemnity Company v. Merling*, the Maryland Court of Appeals held that the plaintiff had failed to state claims for conversion and tortious interference against an insurer.  605 A.2d at 89–90.  In Part I of the opinion, the court held that the insurer's actions "did not constitute a conversion" because they were "entirely in accordance" with the applicable provisions of the Insurance Code.  *Id.* at 89.  In Part II, the Court said,

> For one to recover for tortious interference with contractual or economic relations,[3] the interference must have been wrongful or unlawful.  For the reasons set forth in Part I of this opinion, [the insurer's] actions were neither wrongful nor unlawful.  Therefore Travelers did not tortiously interfere with [the plaintiff's] contractual or economic relations with his clients.

*Id.* at 90 (citations omitted).  The implication is clear:  Had the insurer violated the insurance statute, the plaintiff could have predicated his tortious interference claim on that unlawful action.  Because the plaintiff had not shown that violation, he could not bring that claim.  If it were categorically impermissible for a plaintiff to predicate a tortious interference claim against an insurer on a violation of the Insurance Code, the court had every reason to say so.  It did not.

A few years later, the Maryland Court of Appeals again rejected a tortious interference claim against an insurer because the insurer's conduct complied with the Insurance Code.  *Med. Mut. Liab. Soc. v. B. Dixon Evander & Assocs.*, 660 A.2d 433, 438–39 (Md. 1995).  As the court explained,

> the General Assembly ha[d] set forth in [the Insurance Code] specific procedures which an insurer must follow in cancelling an agreement with an agent or broker.  The parties to [*Meidcal Mutual Liability Society*] agree[d] that Medical Mutual properly followed the statutory procedures set forth in § 234B of the Insurance Code.  Since Medical Mutual both had the right to sever its business relationship with Evander, Inc., and effected the termination in accordance with the statute, its termination of Evander, Inc. was neither wrongful nor unlawful.

*Id.*  Once again, the problem was not that the plaintiff had attempted to predicate a tortious interference claim on a violation of the insurance statute.  The court mentioned no categorical bar to that.  The problem was that the plaintiff had not shown that the insurer actually violated the Insurance Code.

---

[3] The phrase "tortious interference with economic relations" is a synonym for "tortious interference with prospective advantage."  *See K & K Mgmt. v. Lee*, 557 A.2d 965, 979 (Md. 1989) (using the two interchangeably).

Ultimately, Allstate's argument amounts to the assertion that a tortious interference claim must be predicated on unlawful conduct the plaintiff has a private right to challenge directly.  But Allstate cites no authority for the proposition.  Nor could it.  After all, Maryland law permits plaintiffs to bring tortious interference claims based on criminal conduct.  *K & K*, 557 A.2d at 979.

Allstate's argument that Total Recon's claims must be dismissed because the relevant provisions of the Maryland insurance statute do not provide a private right of action fails.[4]

### b.  The merits

That leaves the merits question: Whether Total Recon has pled that Allstate interfered with prospective business by violating Ins. §§ 27-303, 27-304, or 10-503.  Section 303 provides that it is "an unfair claim settlement practice and a violation of this subtitle for an insurer" to commit certain enumerated acts.  Ins. § 27-303.  Total Recon alleges that Allstate committed two of them: "refus[ing] to pay a claim for an arbitrary or capricious reason based on all available information," Ins. § 27-303(2), and "fail[ing] to act in good faith, as defined under § 27-1001 of [the Insurance Code], in settling a first-party claim under a policy of property and casualty insurance," Ins. § 27-303(9).  ECF 4, ¶ 31(a)–(b).

Total Recon has not plausibly alleged that Allstate arbitrarily or capriciously refused to pay a claim.  "An insurer acts arbitrarily or capriciously when it refuses to pay a claim subject to individual judgment or discretion or based on an unpredictable whim." *People's Ins. Couns. Div. v. State Farm Fire & Cas. Ins. Co.*, 76 A.3d 517, 524 (Md. Ct. Spec. App. 2013) (cleaned up).  By

---

[4] A distinct question is whether the statute protects only the interests of insureds.  Under Maryland law, "a plaintiff must satisfy the court that 'the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Kendall v. Howard Cnty.*, 66 A.3d 684, 692 (Md. 2013) (quoting *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153 (1970)).  Because that question was not briefed and would not change the outcome of this decision, the Court does not decide it.

contrast, "an insurer may properly deny a claim if the insurer has an otherwise lawful principle or standard which it applies across the board to all claimants." *Berkshire Life Ins. Co. v. Md. Ins. Admin.*, 791 A.2d 942, 966–67 (Md. Ct. Spec. App. 2002) (quotation omitted).   Total Recon alleges that Allstate denied claims for repairs at Total Recon pursuant to a policy of requiring that each claim be supported by a physical inspection by an adjuster.   ECF 4, ¶¶ 47–48.   Nowhere does Total Recon allege that Allstate left the payment of claims for repairs at Total Recon to the "individual judgment or discretion" of its employees or granted some claims and denied others "based on an unpredictable whim."   To the contrary: Total Recon suggests that Allstate's new physical inspection policy applied to all Allstate insureds, effectively making it impossible for any Allstate insured to have their car repaired at Total Recon.   To be sure, Total Recon suggests that the new policy does not apply equally to all repair shops.   But what matters is whether "it applies across the board to all claimants." *Berkshire*, 791 A.2d at 966–67.   Even if that were not the case, there is an additional, independent defect with the complaint:   Total Recon has not pled the denial of any repair claim with the specificity required to make its allegations plausible.   The complaint does not contain any details about even one particular denial.

Total Recon also has failed to plead that Allstate denied claims for repairs at Total Recon in violation of the good faith requirement of Ins. § 27-303(9).   "An insurer does not act in good faith if it fails to make 'an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim.'"   *People's Ins.*, 76 A.3d at 524–25 (quoting Ins. § 27-1001).   As that language suggests, the problem is that the good faith requirement governs the evaluation of whether to pay an individual's claim pursuant to an insurer's policies.   It does not appear that any court has ever

found that the good faith requirement governs an insurer's claims administration policies themselves.  As a result, Total Recon has failed to plead that Allstate violated Ins. § 27-303(9).

Total Recon also fails to allege that Allstate violated Ins. § 27-304.  That provision declares it an unfair claim settlement practice to commit any of the acts it enumerates "with the frequency to indicate [that the violations are] a general business practice."  Ins. § 27-304.  Total Recon here reiterates its allegations that Allstate denied claims arbitrarily and capriciously (now in violation of Ins. § 27-304(15)) and did not assess claims in good faith (now in violation of Ins. § 27-304(18)).  Because Total Recon has not sufficiently alleged that Allstate violated these provisions once, Total Recon has not sufficiently alleged that Total Recon violated these provisions "with the frequency to indicate [that the violations are] a general business practice" either.  Ins. § 27-304.  So Total Recon has failed to plead that Allstate violated Ins. §§ 27-304(15) and 27-304(18).

Total Recon also alleges that Allstate violated Ins. § 27-304(3), which prohibits "fail[ing] to adopt and implement reasonable standards for the prompt investigation of claims that arise under policies," and Ins. § 27-304(8), which bars "attempt[ing] to settle a claim for less than the amount to which a reasonable person would expect to be entitled after studying written or printed advertising material accompanying, or made part of, an application."  The Court takes each in turn.  Total Recon does not spell out its theory of how Allstate's conduct violated Ins. § 27-304(3).  As far as the Court can tell, the idea is that Allstate's policy of requiring physical inspections for claims for service at Total Recon is an unreasonable standard for investigating claims.  But Total Recon says nothing to indicate that Allstate fails to adopt and implement reasonable standards "with the frequency to indicate [that the violations are] a general business practice."  Ins. § 27-304.  At most, Total Recon alleges that Allstate has done so once, by adopting the putatively unreasonable policy of requiring physical inspections before paying out claims for repairs at Total

Recon.  Even if Total Recon has alleged a single failure to adopt and implement reasonable standards for the prompt investigation of claims—a question this Court need not and does not decide—Total Recon has failed to allege enough violations to indicate a general business practice. For these reasons, Total Recon has failed to plead that Allstate violated § 27-304(3).

As for Ins. § 27-304(8), Total Recon once again leaves the Court guessing.  Presumably, the theory of Total Recon's Ins. § 27-304(8) claim is that a reasonable Tesla owner would expect Allstate to fully reimburse them for the cost of work at Total Recon, when in fact, in the period when Allstate was still processing Total Recon repair claims, Allstate would only cover $46 per hour, rather than the full rate of $60 per hour.  But even if Total Recon had clearly advanced that theory, the complaint fails to allege facts that would raise that theory beyond mere speculation. Not only has Total Recon failed to plead with any detail any particular instance of Allstate refusing to cover the full $60 per hour rate and reimbursing an insured for only $46 per hour.  Total Recon has failed to plead sufficient facts concerning what "a reasonable person would expect to be entitled after studying written or printed advertising material accompanying, or made part of, an application."  Ins. § 27-304(8).  On that issue, all Total Recon has pled is that the prevailing rate for comparable work was $46 per hour but that all TACCs were required to charge $60.  Perhaps Total Recon can connect the dots between those figures and what a reasonable Allstate insured would expect Allstate to cover based on Allstate's advertising of its policies.  But Total Recon cannot expect the Court to do that for it.  Total Recon has not successfully alleged that Allstate violated Ins. § 27-304(8)—much less that Allstate has a general business practice of violating it.

Last, Total Recon has not alleged that Allstate violated Ins. § 10-503 either.  That section of the Insurance Code provides that

(a) An adjuster, appraiser, or insurance producer or employee of an insurer may not:

> (1) recommend the use of a specific repair service or source for the repair or replacement of property damage to a motor vehicle without informing the claimant or insured that the claimant or insured does not have to use the recommended repair service or source;
>
> (2) require that an appraisal or repair be made in a specific repair shop;
>
> (3) require that a claimant or insured use a specific contractor or repair shop for a repair service or repair product; or
>
> (4) intimidate, coerce, or threaten a claimant or insured to use a specific contractor or repair shop for a repair service or repair product.

Ins. § 10-503. Total Recon does not allege that Allstate committed any of these prohibited acts. It does not allege that Allstate recommended that its insureds use some specific repair service without informing them that they need not accept Allstate's recommendation. It does not allege that Allstate required that any specific appraisal or repair be made in any specific repair shop. And it does not allege that Allstate required any specific insureds to get their repairs done by some specific, alternative repair shop. At most, Total Recon alleges that Allstate agents expressed that Allstate would prefer that its insureds not use Total Recon. But none of these provisions prohibits that. Nor does Total Recon allege that Allstate intimidated, coerced, or threatened its insureds to induce them to use some specific repair shop. To the contrary, Total Recon alleges that Allstate tried to incentivize them to do so by offering to waive their deductibles. The overarching problem is that Ins. § 10-503(a) bars insurers from steering customers *toward* a specific contractor, repair shop, repair service, or repair product; the statute does not appear to prohibit insurers from steering customers *away* from one. Yet Total Recon alleges only the latter.

In short, Total Recon has failed to plead that Allstate violated any of these provisions of the Maryland Insurance Code.

### 2. Defamation

Total Recon also asserts that Allstate wrongfully interfered with prospective business by defaming Total Recon to Allstate insureds.  The elements of a defamation claim under Maryland law are

> (1) the defendant made a defamatory statement to a third person (a requirement known as publication); (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff thereby suffered harm.

*Doe v. Johns Hopkins Health Sys. Corp.*, 274 F. Supp. 3d 355, 365 (D. Md. 2017) (citing *Gohari v. Darvish*, 767 A.2d 321, 327 (Md. 2001)).  "To satisfy federal pleading standards, a plaintiff must specifically allege each defamatory statement." *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 758 (D. Md. 2015).  A plaintiff alleging defamation "need not plead detailed allegations as to each one of the who, what, where, and when, in order to state a claim.  But, they must provide more than vague and hazy allegations as to at least some of these questions.  Their failure to do so renders their pleading deficient." *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 568 (D. Md. 2019).

Allstate argues that Total Recon has failed to plead the first element of a defamation claim—the publication of a defamatory statement—with adequate detail.  The Court agrees.  Total Recon provides some answers to the who, what, where, and when questions.  Total Recon alleges that Allstate representatives made the remarks at issue on phone calls with actual or potential Total Recon clients insured by Allstate, ECF 4, ¶¶ 28, 56, sometime between May 2022 (when Allstate allegedly began its campaign against Total Recon, *id.* ¶ 24) and August 2022, before Total Recon brought this case.  But Total Recon does not answer any of the key questions in detail.  Total Recon does not allege which Allstate agents made these statements—not by title or by name.  Total Recon does not allege the dates when the Allstate agents made these statements.  Total Recon does not

allege which Allstate insureds heard these statements.  Nor does Total Recon allege precisely what the Allstate representatives said.  Only one of the alleged statements—"It is our nightmare when a car ends up at Total Recon"—even purports to be a direct quotation; Total Recon did not put any of the others in quotation marks.

Similarly vague allegations were dismissed in *State Farm*.  There, the defamation claimants alleged, "State Farm has and continues to state to third parties that it is refusing to pay PIP claims because the Medical Clinics, the Clinics' Owners and the medical professionals at the Clinics have and are engaging in fraud and dishonesty."  *State Farm*, 381 F. Supp. 3d at 568 (quoting counterclaim).  From those allegations, "the Court infer[red] that the oral statements were allegedly made by State Farm employees to accident victims and their attorneys."  *Id.*  Even after drawing that inference, the court held that the allegations fell short of the detail necessary to survive the motion to dismiss.  There, as here, the allegations "provid[ed] only a bare-bones rendering of what [the defendant] supposedly said," rather than "alleging even one specific instance of [the defendant] actually making" that statement.  *Id.*  There, as here, the operative pleading "fail[ed] to provide even one date on which the alleged statements were made."  *Id.*  There, as here, the defamation claimants "fail[ed] to name a single" speaker or hearer of the allegedly defamatory remarks.  *Id.*  A defamation plaintiff need not fill in all of these gaps.  But they must fill in some of them.  Total Recon has not.

Total Recon points to two cases that suggest it has pled defamation anyway.  However, both predate *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and rest on the pleading standard that those cases displaced.  First, Total Recon claims that under the Fourth Circuit's decision in *Hatfill v. New York Times Co.*, 416 F.3d 320 (4th Cir. 2005), a defamation plaintiff need only make allegations "sufficiently detailed to enable a

defendant to appropriately respond." *Id.* at 329.  However, after *Twombly* and *Iqbal*, the Fourth Circuit clarified that although defamation claims are not subject to the heightened pleading requirements of Rule 9(b), they nevertheless must include enough details to make it plausible that the claimant is entitled to relief. *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing*, 674 F.3d 369, 377 (4th Cir. 2012).  It is not enough to recite the legal standard or make a conclusory allegation. *Id.* at 377–78.  *Hatfill* is outdated and does not control.  The other case Total Recon cites held that a defamation plaintiff need not "allege: 1) what was said; 2) to whom the statements were made; and 3) when the statements were said." *Freeman v. Synergy Mortg. Corp.*, No. WDQ-06-1152, 2006 WL 8456793, at *3 (D. Md. Sept. 27, 2006).  But that conclusion was grounded on *Hatfill*'s pre-*Twombly* pleading standard. *See id.* (citing *Hatfill*, 416 F.3d at 329).  Under current law, Total Recon must plead enough of these details to make its defamation claim plausible.  Because it has not, it cannot sustain its claim for tortious interference with prospective advantage on the basis of defamation.

### 3. Injurious falsehood

However, even if the plaintiff fails to plead disparaging statements with the specificity required to plead defamation, the plaintiff may sustain a claim for tortious interference on the basis that the statements are injurious falsehoods. *See State Farm*, 381 F. Supp. 3d at 571.  An "[i]njurious falsehood, otherwise known as disparagement, is a 'false and injurious statement that discredits or detracts from the reputation of another's character, property, product, or business.'" *Springer v. Erie Ins. Exch.*, 94 A.3d 75, 79 n.5 (Md. 2014) (quoting Black's Law Dictionary 538 (9th ed. 2009)).  For instance, in *Doe v. Johns Hopkins Health System*, the court held that the plaintiff "ha[d] stated a claim for intentional interference with business relations arising from [] alleged negative statements." 274 F. Supp. 3d at 370.  In assessing whether these negative

statements were defamatory, the court found that two of the plaintiff's allegations lacked the detail necessary to support a defamation claim: the plaintiff's allegation that an unidentified agent of the defendants provided some sort of "negative information" about the plaintiff to a third-party, *id.* at 369, and the plaintiff's allegation that a defendant's employee made unspecified "negative comments" about the plaintiff, *id.* at 369–70.  Even though the court found these allegations "insufficiently specific to support a defamation claim," *id.* at 369, the court found these same allegations sufficed to support a claim for tortious interference "regardless of whether those statements are specific enough to support a claim for defamation," *id.* at 370.  Similarly, in *Master International Co. v. Blackstone International*, No. JKB-12-3758, 2013 WL 3147010 (D. Md. June 18, 2013), the court held that the plaintiffs had stated a claim for tortious interference with prospective advantage predicated on allegations that the defendants "told [two] retailers that Plaintiffs were to blame for failings of quality and timeliness." *Id.* at *7.  The defendants objected that "the complaint points to no specific communications whereby these [alleged statements] were made or to whom they were made." *Id.* (alteration in original).  But the court concluded that the complaint did not have to include those details to state a claim for tortious interference with prospective advantage. *Id.*

Total Recon has pled Allstate's disparaging remarks with at least as much detail as the plaintiffs pled the injurious falsehoods that sufficed in *Doe* or *Master International*.  Whereas the *Doe* plaintiff pled that speakers conveyed "negative information" or made "negative comments," Total Recon has pled that Allstate agents disparaged Total Recon in specific ways—calling its work poor quality, challenging its integrity, and accusing it of price gouging.  Just as the *Master International* plaintiffs alleged that the defendants "disparag[ed] their work to Wal-Mart employees" without naming any particular employee the defendants spoke with or any specific

communication by which the defendants committed this disparagement, *Master Int'l*, 2013 WL 3147010, at *2, so Total Recon has alleged that Allstate disparaged its work to Allstate insureds, without naming any particular insured to whom Allstate made these remarks. Total Recon has pled these remarks with the requisite specificity for a tortious interference claim.

Nevertheless, Total Recon has failed to plead that Allstate's alleged remarks were injurious falsehoods, because Total Recon has not alleged with specificity the harm it incurred as a result of any of these remarks. To plead injurious falsehood, the plaintiff must allege "that the publication has played a material and substantial part in inducing others not to deal with him, and that as a result he had suffered special damage." *Horning v. Hardy*, 373 A.2d 1273, 1278 (Md. 1977). Total Recon broadly asserts that "[a]s a result of Allstate's [remarks], prospective clients of Total Recon took and, presumably, will continue to take their business to repair shops other than Total Recon," ECF 4, ¶ 52, costing the auto center future profits, *id.* ¶ 54. But Total Recon does not allege its injuries in any detail. To be sure, Total Recon provides one example of a specific customer it allegedly lost as a result of this dispute: "on or about June 20, 2022, an individual identified as 'Clayton DJCLAY Harris' posted a one (1) star review for Total Recon on Google stating 'They don't work with All-State insurance. Had to go to another company.'" *Id.* ¶ 28. However, Total Recon does not allege that Harris took his business elsewhere as a result of hearing any of the disparaging statements Allstate allegedly made. In consequence, Total Recon has not pled the special damage required to predicate its tortious interference claim on injurious falsehood.

Because Total Recon has failed to plausibly allege that Allstate committed an intentional wrongful or unlawful act to interfere with Total Recon's business, Total Recon has failed to plead tortious interference with prospective advantage. Count II is dismissed without prejudice.

### D. Defamation

Total Recon's third count against Allstate is for defamation.  As the Court found while evaluating Total Recon's claim for tortious interference with prospective advantage, Total Recon failed to allege the ostensibly defamatory remarks with sufficient specificity.  For that same reason, Total Recon has failed to plead defamation.  Count III is dismissed without prejudice.

### IV.   Conclusion

For the foregoing reasons, Allstate's motion to dismiss, ECF 16, is granted.  Total Recon's claims are dismissed without prejudice.  A separate order follows.

Date:   December 11, 2023

Deborah L. Boardman
United States District Judge

23